PENOBSCOT BOOM CORPORATION *vs.* PENOBSCOT LUMBERING ASSOCIATION.

*Charter—construction of.*

The defendants are the lessees of the plaintiff's boom and appurtenances at the rent of nine cents for each and every thousand feet of logs and other lumber passing through the same. This rent is the equivalent, by statute, for the use of the booms and appurtenances, and is not to be increased, though under some circumstances a portion of the logs may be twice rafted before they pass through the plaintiff's booms.

ON REPORT.

ASSUMPSIT to recover tolls, claimed by the plaintiffs, under the statutes regulating the leasing of the works and privileges of the plaintiffs to the defendants.

The Penobscot Boom Corporation exists by Private and Special Laws of 1832, c. 236, and the additional and amendatory acts passed in 1838, c. 468; 1841, c. 163; 1842, c. 47; 1844, c. 167; 1846, c. 299; 1854, c. 298 and c. 299; and 1869, c. 25 and c. 34.

The Penobscot Lumbering Association was created by Special Laws of 1854, c. 298, by which also the plaintiff's charter was amended; and this last named act was amended in 1869, by c. 25 and c. 34 of the Private and Special Laws of that year.

By the Special Act of 1854, c. 298, §§ 6, 9, the defendants were authorized to take a lease of the plaintiffs' booms and other property, paying a toll of ten cents per M. feet on all logs, etc., " passing through said booms ;" and by c. 299 of that year, § 10, the plaintiffs were required to execute such lease if applied for within twenty days after the passage of the act. Both corporations acquiesced and availed themselves of the provisions of these enactments.

There were two booms, several miles apart, included in the leased property. During the rafting season logs are rafted out of both booms. Rafting is the separation of the logs of different own-

ers, putting those of each into separate joints, secured together by warps and wedges. They are then put on to buoys and there delivered to the owners. Certain of the logs rafted in the upper (called the Argyle) boom, upon which the rental-toll has been paid by the defendants to the plaintiffs, have to be again rafted in the lower boom, owing to the causes and under the circumstances stated in the opinion. The question at issue is, whether or not a second toll is collectable upon such logs as are twice rafted, once in each boom; if so, the defendants are to be defaulted; otherwise, judgment is to be rendered in their favor.

*F. A. Wilson,* for plaintiffs.

The logs rafted at the lower boom are, as to that boom, new and unrafted logs, notwithstanding they may have been rafted above. Precisely the same service is performed upon them as though they had never been rafted. The single toll is for passing the boom once and not twice. As well might a foot passenger over a toll-bridge claim an immunity from further payments after paying toll once each way.

The toll is payable for the labor, the use of the works, the risks and liabilities and as a compensation for the franchise.

The logs wintered in the lower boom wear it out, press upon the works and create a risk and liability to themselves and the boom, occupying room otherwise available for other logs, and by their position have the precedence in rafting and in the market in the spring. And in this second rafting the plaintiffs' property is used.

The case shows that the logs, after being rafted at the upper boom and placed at the buoys, have been there accepted by their owners.

*Wm. H. McCrillis,* for defendants.

The toll was fixed upon the cost of the works as a basis; therefore only one toll is demandable upon the same logs under any circumstances. This point is decided in *Penobscot Lumbering Association* v. *James Walker,* A. D. 1871, not reported.

APPLETON, C. J. The plaintiff corporation erected two booms, the upper or Argyle boom and the lower boom, both comprised within the limits of "the boom."

The upper or Argyle boom is some miles up the river from the lower boom. Both together constitute the plaintiff corporation. The owners of logs at the Argyle boom after receiving them on the buoys from the defendants (rafted), place them on the shore of the river for safe keeping until removed to the mills below for manufacture; such logs remain there for days, and even for months. Some of them escape and go into the lower boom. Some by stress of weather and storms are detached from the shores and go into the lower boom; some are detached by the owners and driven into the lower boom for shelter and safety during the winter. All such logs detached from the shores, on passing into the lower boom become intermingled with logs that come into the lower boom without passing through the upper boom, and are again rafted at the lower boom.

The question presented for the determination of the court is this: When logs are rafted at the Argyle boom, and the rental of nine cents per thousand feet has been paid by the defendants to the plaintiffs on such logs, and the logs afterwards, as before stated, go into the lower boom and are rafted there, are the defendants liable to the plaintiffs for another and additional rental of nine cents per thousand feet on such logs?

The rights of the parties litigant depend upon the construction to be given to the several legislative acts by and under which they exist.

The boom was incorporated in 1832, and its limits, embracing the river between the upper and lower boom, fixed, and by c. 299, § 2, approved April 5, 1854, the limits were extended to the head of Olamon Island, and it was provided that " said corporation shall have the exclusive right within said limits to boom, pick up and raft logs, and are authorized to raft the same at such places from their booms, as they shall deem necessary."

By § 3 it is made "the duty of log-owners to receive and take

away their logs as the same shall be rafted and fastened to the buoys; and if they shall neglect so to do and suffer them to accumulate so as to retard the rafting, then the corporation may run them away and hitch them to the shores below, and for doing .the same shall be entitled to receive the sum of four cents each for the logs thus run away."

It is thus seen that the rights of the plaintiffs within their limits are exclusive, and that if there be neglect on the part of the log-owners, so as to retard their operations, the logs may be removed by the plaintiffs and at the cost of the log-owners. The logs too are to be rafted from the plaintiffs' boom at such places as they shall deem necessary.

By c. 298, approved April 5, 1854, the defendant corporation received their charter, and that of the Penobscot Boom Corporation was amended.

By § 9, "Instead of the toll or boomage now allowed to the proprietors of the Penobscot Boom Corporation, there shall be allowed and paid to them by the association as and for a full equivalent for the use of said boom, shore, buildings, and other structures connected therewith the sum of ten[*] cents for each and every thousand feet of logs, and other lumber passing through said booms for the term of fifteen years next ensuing, and without being subject to alteration by the legislature during that time."

The toll allowed is for the use of the boom and its appurtenances. It is for logs and lumber passing through "said booms." Whether there are one or more raftings within the limits of the boom, the rafts pass through "the said booms" but once. "The said booms" are, obviously, the upper and lower booms. But one toll is given and it is for the use of the plaintiffs' booms and other erections and for that only, and that toll the statute declares shall be a "full equivalent" for such use. The log-owners as a matter of convenience and arrangement, may take the logs when rafted, before they reach the lower boom. But if rafted, and taken at the lower boom, the logs have only passed through the booms.

---

[*]Reduced to nine cents by an act approved April 5, 1869.

The various acts for which compensation is sought, were done within the exclusive limits of the plaintiff corporation and in the use of its booms and appurtenances. Double toll was not to be exacted. The "full equivalent" for the "use," of the plaintiffs' booms and appurtenances, as provided by statute, has been paid, and the plaintiffs are not entitled to further or additional compensation. *Judgment for defendants.*

CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred.